UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

FORTIES B, LLC and TANAZ ESHAGHIAN,      :
          :
          Plaintiffs,      :
          :
      -against-      :      09-Civ-8583 (JSR)
          :
AMERICA WEST SATELLITE, INC. d/b/a PARS    :
TV NETWORK, PERSIAN BROADCAST    :
SERVICE GLOBAL, INC. d/b/a PARS TV    :
NETWORK, AMIR SHADJAREH, FARIBORZ    :
ABBASSI, AZADI TV INCORPORATED,    :
XYZ COMPANY and JOHN DOE    :
          :
          Defendants.      :
------------------------------------------------------------------------x

## MEMORANDUM OF LAW OF DEFENDANTS AMERICA WEST SATELLITE, INC. d/b/a/ PARS TV NETWORK, PERSIAN BROADCAST SERVICE GLOBAL, INC. d/b/a PARS TV NETWORK AND AMIR SHADJAREH IN SUPPORT OF <u>THEIR MOTION TO DISMISS THE AMENDED COMPLAINT</u>

**STORCH AMINI & MUNVES PC**
**2 Grand Central Tower**
**140 East 45th Street, 25th Floor**
**New York, New York 10010**
**(212) 490-4100**

**Attorneys for Defendants**
**America West Satellite, Inc.**
**d/b/a Pars TV Network,**
**Persian Broadcast Service Global, Inc.**
**d/b/a/ Pars TV Network and Amir Shadjareh**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES................................................................................................ii

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF ALLEGED FACTS ............................................................................. 4

ARGUMENT ..................................................................................................................... 4

I.    There is No Basis for this Court to Exercise Personal Jurisdiction Over
      Defendant Persian Broadcast Service Global, Inc.................................................... 4

      A.    The Court Lacks Personal Jurisdiction Over Defendant Persian Broadcast Service
            Global, Inc. Under Governing Law ................................................................. 4

            1. C.P.L.R. Section 302(a)(1) ...................................................................... 5

            2. C.P.L.R. Section 302(a)(2) ...................................................................... 7

            3. C.P.L.R. Section 302(a)(3) ...................................................................... 7

      B.    Exercising Personal Jurisdiction over Defendant Persian Broadcast Service Global,
            Inc. Would Violate Due Process .................................................................... 8

II.   Plaintiffs' State Law Claims Must Be Dismissed ................................................... 8

      A.    Plaintiffs' Claim for Intentional Infliction of Emotional Distress is Barred by the
            Applicable Statute of Limitations .................................................................. 8

      B.    The Amended Complaint Fails to State a Claim For Intentional Infliction of
            Emotional Distress .......................................................................................... 9

      C.    The Amended Complaint Fails to State a Claim For Tortious Interference with
            Contractual Relationships .............................................................................. 11

III.  To The Extent Plaintiffs Rely On Infringing Acts Occurring In The United Kingdom Or Iran,
      Plaintiffs Fail To State A Claim Actionable Under U.S. Copyright Law ........................ 12

IV.   Plaintiffs' Claims For Relief Under The Lanham Act Are Merely Duplicative Of Their
      Claims Under The Copyright Act And Should Therefore Be Dismissed ......................... 14

CONCLUSION ................................................................................................................ 15

## TABLE OF AUTHORITIES

**Cases**                                                                                    **Page**

Agency Rent A Car Sys. Inc. v. Grand Rent A Car Corp.,
  98 F.3d 25 (2d Cir 1996)............................................................................................ 5

Armstrong v. Virgin Records, Ltd.,
  91 F. Supp.2d 628 (S.D.N.Y. 2000) ....................................................................... 13

Best Van Lines, Inc. v. Walker,
  490 F.3d 239 (2d Cir. 2007)..................................................................................... 5

Cohn-Frankel v. United Synagogue of Conservative Judaism,
  246 A.D.2d 332 (1st Dep't 1998) .......................................................................... 10

Bensusan Rest. Corp. v. King,
  126 F.3d 25 (2d Cir. 1997)....................................................................................... 7

Fort Knox Music, Inc. v. Baptiste,
  203 F.3d 193 (2d Cir. 2000)..................................................................................... 5

Gabel v. Richard Spears Kibbe & Orbe, LLP,
  615 F. Supp.2d 241 (S.D.N.Y. 2009)................................................................... 8, 9

Harville v. Lowville Cent. Sch. Dist.,
  245 A.D.2d 1106 (4th Dep't 1997) ....................................................................... 10

Howell v. N. Y. Post Co., Inc.,
  81 N.Y.2d 115 (N.Y. 1993)..................................................................................... 9

Int'l Customs Assoc., Inc. v. Ford Motor Co.,
  893 F. Supp. 1251 (S.D.N.Y.1995)....................................................................... 12

Kirch v. Liberty Media Corp.,
  449 F.3d 388 (2d Cir. 2006)................................................................................... 11

Lama Holding Co. v. Smith Barney Inc.,
  668 N.E.2d 1370 (N.Y. 1996) ............................................................................... 11

Marvullo v. Gruner & Jahr,
  105 F. Supp.2d 225 (S.D.N.Y. 2000).................................................................... 14

McGowan v. Smith,
  419 N.E.2d 321 (N.Y. 1981) ................................................................................... 5

Murphy v. Am. Home Products Corp.,
  58 N.Y.2d 293 (N.Y. 1983) ................................................................ 10

Robert Stigwood Group Ltd. v. O'Reilly,
  530 F.2d 1096 (2d Cir. 1976) ............................................................ 13

Ross v. Louise Wise Servs.,
  8 N.Y.3d 478 (N.Y. 2007) .................................................................. 9

Sunward Elecs., Inc. v. McDonald,
  362 F.3d 17 (2d Cir. 2004) ............................................................. 5, 6

Talbot v. Johnson Newspaper Corp.,
  123 A.D.2d 147 (3d Dep't 1987), ........................................................ 6

Whitaker v. Am. Telecasting, Inc.,
  261 F.3d 196 (2d Cir. 2001) ............................................................... 4

Wiener v. UnumProvident Corp.,
  202 F. Supp.2d 116 (S.D.N.Y. 2002) ................................................. 10

World-Wide Volkswagen Corp. v. Woodson,
  444 U.S. 286, 291-92, 297 (1980) ...................................................... 8

**Statutes**

28 U.S.C. § 1138 ....................................................................................... 5

28 U.S.C. § 1367 ....................................................................................... 5

C.P.L.R. Section 302 ............................................................................. 1, 5

C.P.L.R. Section 302(a) .............................................................................. 5

C.P.L.R. Section 302(a)(1) ..................................................................... 5, 6

C.P.L.R. Section 302(a)(2) ......................................................................... 7

C.P.L.R. Section 302(a)(3) ..................................................................... 7, 8

**Rules**

Fed. R. Civ. P. 12(b)(2) .......................................................................... 1, 4

Fed. R. Civ. P. 12(b)(6) .................................................................. 1, 2, 3, 4

Defendants America West Satellite, Inc. d/b/a Pars TV Network ("America West"),

Persian Broadcast Service Global, Inc. d/b/a/ Pars TV Network ("PBSG") and Amir Shadjareh

("Shadjareh," and, together with America West and PBSG, "Defendants") respectfully submit

this Memorandum of Law in Support of their Motion to Dismiss Plaintiffs' February 19, 2010

Amended Complaint, dated February 19, 2010 (the "Amended Complaint" or "Compl.") for lack

of personal jurisdiction and failure to state a claim upon which relief can be granted, pursuant to

Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).

## PRELIMINARY STATEMENT

The Amended Complaint in this action alleges that Pars TV Network, inaccurately

alleged to be operated by both America West and PBSG, is liable for infringing Plaintiffs'

copyright for the film "Be Like Others" (the "Film") by broadcasting at least a portion of the

Film on its station in May 2008.[1]  This Amended Complaint fails, and should be dismissed, for at

least four separate reasons.

First, it should be dismissed pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal

jurisdiction over PBSG.  The Amended Complaint contains no allegations – and indeed fails to

even reference – the long-arm jurisdiction provided under New York Civil Practice Law and

Rules ("C.P.L.R.") § 302.  In addition, it fails to allege facts sufficient to demonstrate that PBSG,

which maintains no offices, employees, agents or bank accounts here, is transacting business in

New York within the meaning of C.P.L.R. § 302.  Furthermore, the Amended Complaint fails to

allege facts sufficient to permit a finding that PBSG either committed a tortious act within New

York, or such an act outside the State causing injury within New York.  Finally, the exercise of

jurisdiction over PBSG in New York would violate the Due Process Clause.

---

[1]   As Plaintiffs are aware, America West is a dissolved corporation.  PBSG has exclusively operated Pars TV
Network at all times since June 2003.  (Declaration of Amir Shadjareh, dated April 3, 2010 ("Shadjareh Decl.")
¶ 4).

Second, the state law claims contained in the Amended Complaint must be dismissed (a) because Plaintiffs' claim for intentional infliction of emotional distress is barred by the applicable statute of limitations and (b) pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. In New York, the statute of limitations for claims of intentional infliction of emotional distress is one year. Here, the most recent act giving rise to such a claim alleged in the Amended Complaint is the broadcast of the Film in May 2008. The original complaint was not filed until October 2009, and, as such, the claim is untimely. The Amended Complaint contains no allegations sufficient to support equitable tolling of the statute of limitations.

In addition, as set forth below, the Amended Complaint contains nothing more than conclusory allegations consisting of an attempted formulaic recitation of the elements of the state law causes of action asserted therein. It is utterly lacking in facts – because there are none – demonstrating any wrongdoing by Defendants. The Amended Complaint fails to allege any facts supporting a claim that Defendants' conduct, in allegedly violating Plaintiffs' copyright by broadcasting the Film, constituted the "extreme and outrageous" conduct necessary to sustain a claim for intentional infliction of emotional distress. The Amended Complaint also fails to allege, as required, that Defendants engaged in a plan or campaign of conduct designed to cause Plaintiffs' emotional distress.

Plaintiffs' claim for tortious interference with contractual relationships must also be dismissed for failure to state a claim. The Amended Complaint fails to offer allegations supporting the black letter elements of such a claim. First, the Amended Complaint does not allege that Defendants, without justification, procured a third-party's breach of a contract between Plaintiffs and such third party. Instead, and rather incredibly, the Amended Complaint asserts that Defendants' broadcast of the Film caused <u>Plaintiffs</u> to breach their own contracts

with unidentified third parties.  This novel application of the law simply does not support a claim of tortious interference with contract.  Furthermore, as the Amended Complaint does not allege that Plaintiffs authorized Defendants' broadcast of the Film – and in fact alleges the opposite – the Amended Complaint does not allege facts sufficient to show that Plaintiffs breached their third-party contracts.  Defendants, who are not party to such contracts, cannot breach them.  Similarly, Plaintiffs are not responsible for Defendants' actions and therefore cannot be said to have breached such contracts either.

Third, the claims brought under the United States Copyright Act should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.  Plaintiffs base their claim for copyright infringement, at least in part, on acts occurring in the United Kingdom and Iran.  In addition, all of Plaintiffs' damage theories arise from the broadcast of the Film in Iran.  However, U.S. copyright law is not enforceable outside the United States, and the Amended Complaint cites no foreign authority violated by Defendants' alleged acts in the United Kingdom or Iran.  As such, to the extent that Plaintiffs' claims are based upon an alleged copying of the Film in the United Kingdom or the broadcast of the Film in Iran, the Amended Complaint fails to state a claim for relief and therefore should be dismissed.

Fourth, Plaintiffs' claims under the Lanham Act are merely duplications of their claims for copyright infringement.  As a result, the Amended Complaint fails to meet the pleading burden for Lanham Act claims.  Accordingly, the Amended Complaint fails to state a claim for relief under the Lanham Act and should be dismissed.

For these reasons, as set forth more fully below, the Amended Complaint should be dismissed in its entirety.

## STATEMENT OF ALLEGED FACTS

Defendant PBSG operates Pars TV Network ("Pars TV") from its offices in Tarzana, California. (Shadjareh Decl. ¶ 2.) Pars TV exists for the sole purpose of drawing light to and highlighting the abuses of the oppressive regime currently ruling Iran. (Id. ¶ 3.) PBSG has exclusively operated Pars TV at all times since at least June 2003. (Id. ¶ 4.) Prior to that time, defendant America West operated Pars TV. (Id. ¶ 5.) However, America West dissolved by May 2003 and has had no operations since that time. (Id.) Defendant Shadjareh is the sole principal of PBSG. (Id. ¶ 1.) Shadjareh was an officer of America West prior to its dissolution. (Id.) Neither Shadjareh, America West nor PBSG have any ongoing contact within the State of New York. (Id. ¶ 6.)

Although the Court must assume the allegations found in the Amended Complaint are true for purposes of this motion to dismiss, Defendants reject not only the claims for relief set forth in the Amended Complaint, but also numerous specific factual allegations made therein.

## ARGUMENT

I.   **THERE IS NO BASIS FOR THIS COURT TO EXERCISE PERSONAL JURISDICTION OVER DEFENDANT PERSIAN BROADCAST SERVICE GLOBAL, INC.**

   A.   **The Court Lacks Personal Jurisdiction Over Defendant Persian Broadcast Service Global, Inc. Under Governing Law**

On a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), the plaintiff bears the burden to demonstrate that the court has jurisdiction. See Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001). In deciding such a motion, the court must undertake a two-pronged inquiry. Id. at 208. The first is whether the exercise of jurisdiction is proper under the applicable statute, and the second is whether such exercise meets the requirements of due process. Id. In a case such as this, involving a federal question and out-of-

4

state defendants, federal courts apply the personal jurisdiction rules of the forum state "if the applicable federal statute does not provide for national service of process." Sunward Elecs., Inc. v. McDonald, 362 F.3d 17, 22 (2d Cir. 2004). Neither the Lanham Act nor the Copyright Act provide for national service of process. See id.; Fort Knox Music, Inc. v. Baptiste, 203 F.3d 193, 196 (2d Cir. 2000).

Here, Plaintiffs fail to offer a single allegation referencing New York's long-arm jurisdiction statute. The sole jurisdictional allegations in the Amended Complaint refer to 28 U.S.C. § 1138 (subject matter jurisdiction) and 28 U.S.C. § 1367 (pendent jurisdiction). (Compl. ¶ 2). As Plaintiffs do not bother to identify a statutory basis for personal jurisdiction, one is forced to assume that they may be relying on subsections (a)(1), (a)(2) and/or (a)(3) of New York's long-arm statute, codified under C.P.L.R. § 302.

### 1. C.P.L.R. Section 302(a)(1)

Section 302(a) provides that "as to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary … who in person or through an agent: 1. transacts any business within the state." C.P.L.R. § 302(a)(1). To be subject to personal jurisdiction under Section 302(a)(1), the defendant must have "transacted business" within New York, and the claim asserted must "arise from" that business activity. McGowan v. Smith, 419 N.E.2d 321, 323 (N.Y. 1981); see also Agency Rent A Car Sys. Inc. v. Grand Rent A Car Corp., 98 F.3d 25, 29 (2d Cir 1996).

In New York, "transacting business" requires "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Best Van Lines, Inc. v. Walker, 490 F.3d 239, 246 (2d Cir. 2007). Moreover, claims only "arise from" a business transaction in New York

"when there exists an articulable nexus or a substantial relationship between the transactions occurring within the state and the cause of action sued upon." Sunward Elecs., Inc., 362 F.3d at 23 (internal quotations omitted).

Plaintiffs do not even attempt to satisfy these stringent standards, failing to allege any specific business transactions occurring in New York. While Plaintiffs allege that PBSG "transact[s] or [is] doing business" in New York, they fail to identify a single specific business transaction taking place in the state. (Compl. ¶ 3.) PBSG is a California corporation operating a small satellite television station for the purposes of highlighting the abuses of the oppressive regime controlling Iran. (Shadjareh Decl. ¶ 3.) While its signal is carried on satellites which allow certain viewers within New York to watch its programming, Plaintiffs do not allege that this constitutes a transaction occurring within the State of New York. Because no transaction is identified, Plaintiffs cannot begin to satisfy the second requirement, which is to allege that the business transaction occurring in New York gives rise to the causes of action. Each damage theory offered by Plaintiffs is derived from the viewing of the Film within Iran. Even if PBSG's broadcast of its station into New York constituted a business transaction, which it does not, Plaintiffs would still be unable to show a "substantial relationship" between that transaction and Plaintiffs' alleged injuries. "[A] defendant may not be subject to personal jurisdiction under C.P.L.R. § 302(a)(1) simply because her contact with New York was a link in the chain of events giving rise to the cause of action." Talbot v. Johnson Newspaper Corp., 123 A.D.2d 147, 149 (3d Dep't 1987), aff'd 71 N.Y.2d 827 (1988). Here, Defendants' alleged broadcast of the Film in New York is not even a link in the chain of Plaintiffs' damage theory, which grows entirely out of the alleged broadcast of the Film in Iran. As such, PBSG cannot be subject to personal jurisdiction under C.P.L.R. § 302(a)(1).

2.        <u>C.P.L.R. Section 302(a)(2)</u>

The analysis under C.P.L.R. § 302(a)(2) is even more straightforward.  Courts may

exercise jurisdiction over a defendant under this section if the defendant "commit[ed] a tortious

act within the state" and plaintiff's injuries arose from that act.  C.P.L.R. § 302(a)(2).  As the

Second Circuit made clear in a factually similar case, "To subject non-residents to New York

jurisdiction under § 302(a)(2) the defendant must commit the tort while he or she is physically in

New York State." <u>Bensusan Rest. Corp. v. King</u>, 126 F.3d 25, 29 (2d Cir. 1997) (internal

quotations omitted).  As Plaintiffs do not allege that any representative of PBSG was present in

New York at the time of any alleged torts, PBSG cannot be subject to personal jurisdiction under

C.P.L.R. § 302(a)(3)

3.   <u>C.P.L.R. Section 302(a)(3)</u>

C.P.L.R. § 302(a)(3) provides for New York courts to exercise jurisdiction over out-of-

state defendants who commit "a tortious act without the state, causing injury to person or

property within the state." <u>Bensusan Rest. Corp.</u>, 126 F.3d at 29; C.P.L.R. § 302(a)(3).

However, jurisdiction under this section is limited to "persons who expect or should reasonably

expect the tortious act to have consequences in the state <u>and</u> in addition derive substantial

revenue from interstate commerce." <u>Bensusan Rest. Corp.</u>, 126 F.3d at 29 (emphasis added).

Here, while Plaintiffs allege without factual support that PBSG derives substantial revenue from

interstate commerce, they offer no allegation that PBSG's alleged tortious act (the broadcasting

of the Film from California) had <u>any</u> consequence in New York. (Compl. ¶ 3).  In fact, all of

Plaintiffs' damage theories arise from the viewing of the Film in Iran, not New York.  In support

of their claims of emotional distress, the Amended Complaint alleges that plaintiff Eshaghian

was the target of "emotional outbursts" from those Iranian citizens appearing in the Film and

7

their families.  (Compl. ¶ 69.)  However, Plaintiffs do not allege that Eshaghian was present in New York when she allegedly suffered these emotional outbursts.  In fact, the Amended Complaint fails to allege that PBSG's broadcast of the Film from California had <u>any</u> actual consequence in New York.  As such, C.P.L.R. § 302(a)(3) does not confer personal jurisdiction over PBSG.

### B.   <u>Exercising Personal Jurisdiction over Defendant Persian Broadcast Service Global, Inc. Would Violate Due Process</u>

Because Plaintiffs have failed to allege facts sufficient to support a finding that PBSG is subject to personal jurisdiction under New York's long-arm statute, this Court need not reach the question of whether such jurisdiction would be consistent with the due process requirement. However, were the Court to proceed to this analysis, the Due Process Clause would preclude exercise of personal jurisdiction over PBSG.  Due process requires that a defendant have "minimum contacts" with the "forum State…such that he should reasonably anticipate being hauled into court there."  <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 291-92, 297 (1980).  Here, Plaintiffs simply allege that PBSG operates a satellite television station capable of being viewed within New York State.  (Compl. ¶ 10).  There are no allegations of any specific contacts with New York, and, as such, the Due Process Clause precludes this Courts exercise of jurisdiction over PBSG.

## II.   PLAINTIFFS' STATE LAW CLAIMS MUST BE DISMISSED

### A.   <u>Plaintiffs' Claim for Intentional Infliction of Emotional Distress is Barred by the Applicable Statute of Limitations</u>

Count IV of the Amended Complaint, brought under New York state common law for intentional infliction of emotional distress, is untimely.  (Compl. ¶ 62).  Under New York law, claims for intentional infliction of emotional distress are governed by a one-year statute of limitations.  See <u>Gabel v. Richard Spears Kibbe & Orbe, LLP</u>, 615 F. Supp.2d 241, 243

(S.D.N.Y. 2009) ("The statute of limitations for intentional infliction of emotions [distress] is one year") citing Ross v. Louise Wise Servs., 8 N.Y.3d 478, 491 (N.Y. 2007).  The most recent act alleged in the Amended Complaint is the broadcast of the Film on May 11, 2008.  (Compl. ¶ 26.)  This alleged act occurred more than a year before Plaintiffs filed their original complaint on October 7, 2009.  Thus, the statute of limitations expired prior to the commencement of this lawsuit.

Moreover, the statute of limitations should not be equitably tolled.  Under New York law, the doctrine of equitable tolling may be invoked to defeat a "statute of limitations defense if the plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action."  Ross, 8 N.Y.3d at 491 (internal quotations omitted).  Furthermore, "a plaintiff may not rely on the same act that forms the basis for the claim – the later fraudulent misrepresentation must be for the purpose of concealing the former tort."  Id.  Plaintiffs have not alleged, nor can they, that Defendants ever induced them, by any means, to refrain from filing a timely action.  As such, Plaintiffs' claim for intentional infliction of emotional distress should be dismissed as barred by the applicable statute of limitations.

**B.  The Amended Complaint Fails to State a Claim For Intentional Infliction of Emotional Distress**

Even assuming, *arguendo*, that Plaintiffs claim was timely filed, Plaintiffs fail to plead the essential elements of a claim for intentional infliction of emotional distress.

Under New York law, a claim for intentional infliction of emotional distress requires: "(1) extreme and outrageous conduct; (2) intent to cause, or disregard of a substantial probability of causing severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress."  Howell v. N. Y. Post Co., Inc., 81 N.Y.2d 115, 121 (N.Y. 1993).  To satisfy the "extreme and outrageous conduct" requirement, plaintiff must show that

defendant's alleged conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." Murphy v. Am. Home Products Corp., 58 N.Y.2d 293, 303 (N.Y. 1983); see also Wiener v. UnumProvident Corp., 202 F. Supp.2d 116, 122 (S.D.N.Y. 2002) ("the emotional distress suffered by the plaintiff must be so severe that no reasonable man could be expected to endure it"). Courts are disinclined to allow recovery for infliction of emotional distress "absent a deliberate and malicious campaign of harassment or intimidation." Cohn-Frankel v. United Synagogue of Conservative Judaism, 246 A.D.2d 332, 332 (1st Dep't 1998). Whether the alleged conduct is "extreme and outrageous" is a question for the Court to decide and may be done in connection with a motion to dismiss. See Harville v. Lowville Cent. Sch. Dist., 245 A.D.2d 1106, 1106-1107 (4th Dep't 1997).

Plaintiffs' Amended Complaint summarily alleges that Defendants' broadcast of the Film "resulted in extreme mental and emotional distress for Plaintiff Eshaghian and those appearing in the Film" and "Defendants engaged in extreme and outrageous conduct." (Compl. ¶¶ 65, 71.) However, Plaintiffs provide no facts to support these conclusory allegations. Plaintiffs' allegation is that Defendants injured Plaintiffs by broadcasting the Film in Iran *via* satellite. (Compl, ¶¶ 64-68). Yet Plaintiffs fail to plead a single fact to support the necessary conclusion that the alleged broadcasting of the Film into Iran constitutes "extreme and outrageous conduct." Indeed, Plaintiffs make no such allegations because there is no basis by which the act of infringing upon Plaintiffs' copyright could constitute the "extreme and outrageous conduct" necessary to sustain a claim of intentional infliction of emotional distress.

Furthermore, the Amended Complaint fails to allege that Defendants engaged in a plan or campaign of conduct designed to cause Plaintiffs emotional distress. There is simply no factual

10

basis for Plaintiffs' claim of intentional infliction of emotional distress, and therefore Plaintiffs'

fifth cause of action should be dismissed for failure to state a claim.

## C.   The Amended Complaint Fails to State a Claim For Tortious Interference with Contractual Relationships

New York recognizes a common law tort of tortious interference with contract.  See

Lama Holding Co. v. Smith Barney Inc., 668 N.E.2d 1370, 1375 (N.Y. 1996).  To state a claim

for tortious interference with contract, a plaintiff must allege:  "(1) the existence of a valid

contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract;

(3) the defendant's intentional procurement of the third-party's breach of the contract without

justification; (4) actual breach of the contract; and (5) damages resulting therefrom."  Kirch v.

Liberty Media Corp., 449 F.3d 388, 402 (2d Cir. 2006) (quoting Lama Holding, 668 N.E.2d at

1375).  Plaintiffs allege the existence of contracts between Plaintiffs and third parties, damages

and, upon information and belief, Defendants' knowledge thereof.  (Compl. ¶¶ 51-52.)

However, Plaintiffs fail to allege any facts supporting the remaining elements, namely

Defendants' "intentional procurement of the third-party's breach of the contract" or "actual

breach of the contract."

Incredibly, Plaintiffs' claim for tortious interference is not based upon Defendants'

alleged inducement of a breach by a third party, but rather that Defendants' acts caused Plaintiffs

to breach their own contracts.  Plaintiffs' novel theory is that Defendants, by their actions,

"tortuously interfered with the contractual relationship between Plaintiffs and these [third

parties]," because these actions "caused Plaintiffs to breach their agreements with these

individuals."  (Compl. ¶¶ 55-56.)  This theory is not supported by law.  Tortious interference

requires that the defendant intentionally cause the third-party to breach the contract.  See Kirch,

449 F.3d at 402.  Setting aside the requirement that the "third-party" be the party that breaches

the contract, Plaintiffs do not, nor can they, allege any facts showing that Defendants took any action to intentionally cause even <u>Plaintiffs</u> to breach.  There is no allegation that Defendants directed any communication or had any contact with Plaintiffs prior to the alleged broadcast.  It would be impossible for one party to intentionally cause another party to breach a contract absent some sort of communication.

Furthermore, the Amended Complaint does not support a finding satisfying the requirement that an actual breach of contract took place.  Plaintiffs allege that they entered into private contracts with those individuals appearing in the Film in which Plaintiffs represented that the Film would not be shown in Iran.  (Compl. ¶ 51.)  Such contracts are not enforceable against non-parties.  <u>See</u> <u>Int'l Customs Assoc., Inc. v. Ford Motor Co.</u>, 893 F. Supp. 1251, 1255 (S.D.N.Y.1995) ("a contract cannot bind a non-party").  Thus, Defendants, non-parties, could not breach Plaintiffs' contracts with the third-parties appearing in the Film.  Additionally, since Plaintiffs do not allege that they in any way authorized Defendants' broadcast of the Film, Plaintiffs cannot show, as they allege, that <u>they</u> have actually breached the third-party contracts. Since Plaintiffs had no role in Defendants' alleged broadcast in Iran, no actions by those actually party to these contracts constitute a breach of those agreements.  Plaintiffs' allegations do not comport with the required elements – the proverbial square peg in a round hole – and therefore fail to state a claim for tortious interference with contract.  As such, Count IV of the Amended Complaint should be dismissed.

## III.  TO THE EXTENT PLAINTIFFS RELY ON INFRINGING ACTS OCCURRING IN THE UNITED KINGDOM OR IRAN, PLAINTIFFS FAIL TO STATE A CLAIM ACTIONABLE UNDER U.S. COPYRIGHT LAW

In Count I of the Amended Complaint, Plaintiffs allege that Defendants have engaged in copyright infringement of a U.S.-registered film by (1) copying the Film from a broadcast shown exclusively in the United Kingdom, and (2) transmitting the Film, in whole or in part, in Iran.

12

Even assuming all allegations in the Amended Complaint to be true, to the extent Plaintiffs rely on acts occurring in the United Kingdom and/or Iran, the Amended Complaint does not allege any activities actionable under Federal law.  It is an incontrovertible matter of law that extraterritorial acts cannot form the basis for allegations of copyright infringement.  The Robert Stigwood Group Ltd. v. O'Reilly, 530 F.2d 1096, 1101 (2d Cir. 1976) ("Copyright laws do not have extraterritorial operation"); Armstrong v. Virgin Records, Ltd., 91 F. Supp.2d 628, 634 (S.D.N.Y. 2000) ("…it is not seriously disputed that United States copyright laws do not have extraterritorial effect, and that infringing acts that take place entirely outside the United States are not actionable under our copyright laws…").

Here, Plaintiffs explicitly allege that "Defendants improperly copied the Film in Suit from [the British Broadcasting Corporation] broadcast, without authorization or permission from neither Plaintiffs nor BBC."  (Compl. ¶ 27.)  Plaintiffs also allege that the BBC broadcast from which the Film was copied was "restricted to showing in the United Kingdom."  (Compl. ¶ 24.) Plaintiffs' allegations of copying the Film in the United Kingdom are not actionable under U.S. copyright law.

Similarly, Plaintiffs allege that Defendants broadcast the Film in Iran.  (Compl. ¶ 26.)[2] However, Plaintiffs identify no law which makes transmission of a U.S.-registered Film in Iran actionable under United States law.  To the extent that Plaintiffs seek damages for the alleged transmission of the Film in Iran – and, indeed all of Plaintiffs' damage theories arise from the broadcast of the Film in Iran – the Amended Complaint fails to state a claim for relief under U.S.

---

[2]    While Plaintiffs also include conclusory allegations that Defendants broadcast the Film in the United States, it is clear from the witnesses identified in Plaintiffs' supplement to their Rule 26(a) disclosures that all witnesses to the alleged infringement are located within Iran.

law.  Therefore, Count I of the Amended Complaint must be dismissed to the extent it is based upon either the copying of the Film in the United Kingdom or the broadcast of the Film in Iran.[3]

## IV.   PLAINTIFFS' CLAIMS FOR RELIEF UNDER THE LANHAM ACT ARE MERELY DUPLICATIVE OF THEIR CLAIMS UNDER THE COPYRIGHT ACT AND SHOULD THEREFORE BE DISMISSED

Counts II and III of the Amended Complaint purport to bring claims for relief under the Lanham Act.  (Compl.¶¶ 33, 43.)  However, Plaintiffs' claims under the Lanham Act must fail because they are merely duplicative of their copyright claims.  See Marvullo v. Gruner & Jahr, 105 F. Supp.2d 225, 232 (S.D.N.Y. 2000) ("Given the most liberal reading of the second amended complaint, plaintiff's Lanham Act claim is based on no more than an alleged copyright violation and is impermissibly duplicative of his claim for relief under the Copyright Act").  Plaintiffs fail to meet the pleading burden for Lanham Act claims.  Therefore, Counts II and III of the Amended Complaint must be dismissed.

---

[3]   In the alternative, if the Court finds that Count I of the Amended Complaint states a claim actionable under United States law, Defendants request that any reference to the copying of the Film in the United Kingdom of the broadcast of the Film in Iran be stricken from the Amended Complaint.  Claims based upon such acts are not actionable under United States law, and, as such, this Court lacks subject matter jurisdiction over them.

## CONCLUSION

For all the reasons set forth above, Defendants respectfully request that the Amended Complaint be dismissed with prejudice against defendant PBSG; Counts II, III, IV and V of the Amended Complaint be dismissed with prejudice against defendants America West and Shadjareh; and that Count I of the Amended Complaint be dismissed with prejudice against defendants America West and Shadjareh to the extent it is based upon acts occurring in the United Kingdom and/or Iran; and for such other and further relief as this Court deems just and proper.

Dated: New York, New York
       April 6, 2010

                                    STORCH AMINI & MUNVES PC

                                    By_____
                                         Bijan Amini (BA-3533)
                                         Russell D. Munves (RM-0950)
                                         Matthew Kane (MK-9645)
                                    Two Grand Central Tower, 25th Floor
                                    140 East 45th Street
                                    New York, NY  10017
                                    (212) 490-4100

                                    *Attorneys for Defendants America West, PBSG
                                    and Shadjareh*

15